WACHOVIA BANK OF NORTH CAROLINA, N.A., Plaintiff-Appellant v. BOB DUNN
JAGUAR, INC., Defendant-Appellee

No. 9421SC200

(Filed 6 December 1994)

**1. Guaranty § 11 (NCI4th)— guaranty signed by person without actual authority—sufficiency of evidence**

In an action to recover on a guaranty on an automobile lease, the person who signed the guaranty on behalf of defendant corporation had no actual authority to do so where he was not an employee, officer, or director of defendant; he was not authorized to execute documents on behalf of defendant; plaintiff had failed to obtain the Signature Authorization or Directors' Resolution according to its own policy; and the person could not be given authority to execute a guaranty by the general manager of defendant who himself was not authorized to execute guaranties.

**Am Jur 2d, Guaranty §§ 26 et seq.**

**2. Guaranty § 11 (NCI4th)— guaranty signed by unauthorized person—no apparent authority to sign**

In an action to recover on a guaranty on an automobile lease, the person who signed the guaranty on behalf of defendant had no apparent authority to execute the guaranty where that person was not the general manager or an officer of defendant; defendant's president specifically told the person that he was not authorized to sign guaranties; defendant's president met with two of plaintiff's vice-presidents and advised them that he did not want any more recourse paper with plaintiff, that no one could execute guaranties on his behalf, and that any guaranties had to have his personal approval and signature; and plaintiff failed to follow its own policy by not requiring defendant to execute a Signature Authorization and Directors' Resolution.

**Am Jur 2d, Guaranty §§ 26 et seq.**

**3. Guaranty § 11 (NCI4th); Principal and Agent § 7 (NCI4th)— guaranty signed by unauthorized person—no agency by ratification**

In an action to recover on a guaranty, the trial court did not err in failing to find agency by ratification or estoppel where the evidence showed that defendant's president was the only person

authorized to make and sign guaranties; the president did not know that another person had signed a guaranty until he was notified three and one-half years later; and he then promptly repudiated the guaranty on behalf of defendant.

### Am Jur 2d, Agency §§ 180-208; Guaranty §§ 26 et seq.

Appeal by plaintiff from judgment filed 1 September 1993 by Judge Julius A. Rousseau, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 20 October 1994.

*Davis & Harwell, P.A., by Fred R. Harwell, Jr., for plaintiff-appellant.*

*Adams Kleemeier Hagan Hannah & Fouts, L.L.P., by Amiel J. Rossabi and Edward L. Bleynat, Jr., for defendant-appellee.*

JOHNSON, Judge.

Plaintiff Wachovia Bank is a national bank headquartered in Winston-Salem, North Carolina. Plaintiff has a Dealer Lease Division to service the needs of consumers who wish to lease rather than purchase new automobiles. Defendant Bob Dunn Jaguar, Inc. is a corporation with its office and principal place of business in Greensboro, Guilford County, North Carolina.

In 1983, Robert C. Dunn was the president of Bob Dunn Ford, Inc. (Dunn Ford), a corporation engaged in selling and leasing Ford and Jaguar automobiles out of a dealership located at 801 E. Bessemer Avenue in Greensboro, North Carolina. Robert C. Dunn and plaintiff have been doing business since the late 1960's.

Beginning in 1983, the Dealer Lease Division of Wachovia established a business relationship with Dunn Ford at the Ford Store. Leases were offered for assignment for value to the Dealer Lease Division at Wachovia. Leases from the Ford Store were assigned to the Wachovia Dealer Lease Division in the name Dunn Leasing Corp., as lessor. Around 1984, Dunn Leasing Corp. was dissolved and Dunn Ford began leasing in the name Dunn Leasing.

Plaintiff had certain policies and general practices where prior to doing business with a new entity or shortly thereafter, plaintiff required execution of a Signature Authorization and a Directors' Resolution authorizing the borrowing of money, and indicating what persons were authorized to execute documents on behalf of the enti-

ty. The purpose of requiring execution of the Signature Authorization and Directors' Resolution was two-fold: (a) to protect the dealer—so that plaintiff would not accept contracts submitted by persons unauthorized to act for the dealer; and (b) to protect plaintiff—so that it only needed to deal with authorized representatives of the dealer.

In May 1983, Dunn Leasing Corp. executed a Signature Authorization and Directors' Resolution which contained the names of officers authorized to execute documents on behalf of Dunn Leasing Corp.

On occasion, both direct and indirect leases were assigned from a Dunn automobile dealership to plaintiff prior to the execution of Signature Authorization forms and Directors' Resolution forms. However, in such transactions, bank officials would immediately thereafter obtain Signature Authorization forms and Directors' Resolution forms pertaining to the dealership assignor.

In June 1984, after the dissolution of Dunn Leasing Co., Dunn Ford continued to assign leases to plaintiff using the name Dunn Leasing, and plaintiff continued to accept assignment of leases from Dunn Ford using the name Dunn Leasing. On 20 June 1984, Dunn Ford executed a Signature Authorization and Directors' Resolution form which contained the names of officers authorized to execute documents on behalf of Dunn Ford d/b/a Dunn Leasing. At some later time, the signature of Joe Parker also appeared in ink on the Signature Authorization form for Dunn Ford d/b/a Dunn Leasing.

All indirect leases assigned to Wachovia's Dealer Lease Division were without recourse unless guaranteed by the dealership lessor. On a few occasions, Robert C. Dunn personally guaranteed payment on indirect leases that were assigned to the Wachovia Dealer Lease Division. At some point in late 1986 or early 1987, however, Robert C. Dunn met with James Valentine and Bob Earnhardt, plaintiff's vice-presidents, and advised them that he did not want any more recourse paper with Wachovia, and that no one, other than Mr. Dunn, was authorized to execute guarantees.

Effective on or about 1 August 1987, a new corporation was formed by Robert C. Dunn to engage in the sales and leases of Jaguar automobiles at a newly constructed dealership located at 3915 W. Wendover Avenue, Greensboro, North Carolina under the name of Bob Dunn Jaguar, Inc. (Dunn Jaguar). Dunn Jaguar, defendant in this action, is a subsidiary of Dunn Ford. Sometime during the fall of 1987,

a grand opening was held at the Jaguar Store, at which Wachovia officials were present.

At its inception and through 1987, Mel Blackwell was the General Manager of defendant Dunn Jaguar, and the officers of Dunn Jaguar were Robert C. Dunn, T. Jeff Lynn, Kathy Curry and Robert C. Dunn, Jr. Wachovia and its Dealer Lease Division did not obtain from Dunn Jaguar a Signature Authorization or Directors' Resolution authorizing Dunn Jaguar to do business with Wachovia.

In 1983, a couple named George and Lilly McKeathen leased a Jaguar automobile from the Ford Store, with Dunn Leasing Corp. as lessor (1983 Lease). The 1983 Lease was assigned to the Dealer Lease Division of Wachovia. The 1983 Lease had been guaranteed by Dunn Leasing Corp., and signed by Robert C. Dunn on behalf of Dunn Leasing Corp.

In November 1987, the McKeathens sought to lease a new Jaguar automobile from the Jaguar Store. The McKeathens filled out a lease application on 17 November 1987, which was transmitted by fax to the Dealer Lease Division of Wachovia. Charles Patterson, an employee of the Dealer Lease Division, reviewed the Lease Application and immediately conditioned acceptance of assignment of the McKeathen Lease on the lessor dealership executing a guaranty of the lessees' obligations. On the same day, Mr. Patterson telephoned Mel Blackwell, then General Manager of the Jaguar Store, and advised him that acceptance of assignment of the McKeathen Lease by Wachovia would be conditioned upon the dealership assignor executing a guaranty of the lessees' obligations. Mel Blackwell told Mr. Patterson that obtaining such a guaranty would be "no problem."

Thereafter, the original lease prepared by Dunn Jaguar, naming that dealership as the lessor and the McKeathens as lessees, was mailed to Wachovia, together with a Security Agreement purportedly granting Wachovia a security interest in the leased vehicle. The Lease was signed by Joe Parker, who indicated in his own handwriting that he was vice president of Dunn Jaguar. The Security Agreement was also signed by Joe Parker. The guarantor portion of the original lease form was executed by George and Lilly McKeathen as guarantors, rather than by any representative of the dealership assignor.

The McKeathen Lease and Security Agreement were then reviewed at Wachovia's Dealer Lease Division, and a representative of the Dealer Lease Division telephoned Mel Blackwell to advise him

that Wachovia required a guaranty of the obligations of the lessees by Dunn Jaguar before accepting assignment of the lease. Mel Blackwell advised representatives of the Wachovia Dealer Lease Division that he would try to obtain such a written guaranty, and a written Guaranty Agreement was then prepared, naming as the Guarantor Dunn Jaguar. The signature line of the Guaranty prepared by Wachovia naming Dunn Jaguar as the Guarantor was left blank.

The Guaranty prepared by Wachovia naming Dunn Jaguar as the guarantor was sent to Mel Blackwell. Mel Blackwell was not authorized to execute any guarantees on behalf of Dunn Jaguar, and Wachovia was aware of this fact. Wachovia did not request execution of the Guaranty Agreement by any specific individual nor did they indicate that the Guaranty Agreement should be signed by Joe Parker. The Guaranty Agreement was signed by Joe Parker, who was vice-president and general manager of Dunn Ford. Mr. Parker was not an employee, officer, or director of Dunn Jaguar. Nonetheless, the guaranty naming Dunn Jaguar as the guarantor was signed by Joe Parker, who indicated in his own handwriting that he was vice-president of Dunn Jaguar. Plaintiff issued a check payable to the order of Dunn Leasing in the amount of $38,978.35 and accepted assignment of the McKeathen Lease. These funds were deposited into the separate bank account of Dunn Jaguar without notice of any discrepancy regarding the payee, and without notice to plaintiff that Joe Parker was not an officer, director, or employee of Dunn Jaguar. Plaintiff had no document in its possession, custody or control which showed that Joe Parker was authorized to sign any document on behalf of Dunn Jaguar.

Around February 1991, the McKeathens defaulted on the 1987 Lease. In May 1991, the president of Dunn Jaguar, Robert C. Dunn, was notified for the first time that Joe Parker had executed the guaranty. Mr. Dunn immediately repudiated the guaranty.

Following a bench trial, the trial court made certain findings of fact. The court concluded as a matter of law that Joe Parker had no actual authority to sign the guaranty on behalf of Dunn Jaguar because he was not an officer, director or employee of Dunn Jaguar; that Joe Parker had no apparent authority to execute the guaranty on behalf of Dunn Jaguar because Robert C. Dunn had notified Wachovia prior to Joe Parker executing the guaranty that there would be no further guaranties executed for the benefit of Wachovia, and that only Robert C. Dunn was authorized to execute any guaranties; and that

plaintiff therefore had actual and constructive notice that Joe Parker had no authority to execute the guaranty. The court further concluded that the unauthorized act of Joe Parker in executing the guaranty was not ratified by Dunn Jaguar, because Dunn Jaguar did not know of the execution of the guaranty until 1991, at which time it immediately repudiated the guaranty.

The trial court entered judgment for defendant. After entry of judgment, the parties made certain post-trial motions, which the trial court denied.

Plaintiff appealed from the judgment and from certain aspects of the 23 September 1993 Order denying its post-trial motions. Defendant appealed from that aspect of the 23 September 1993 Order denying its motion for costs under Rule 37(c), and from the trial court's denial of its motion to tax certain deposition costs to plaintiff.

Plaintiff contends that the trial court erred and abused its discretion by concluding as a matter of law that Joe Parker did not have authority to bind Dunn Jaguar, and by concluding that Dunn Jaguar repudiated the transaction, thus, not ratifying the transaction. Plaintiff argues Joe Parker, vice-president of Dunn Ford, had actual and apparent authority to bind Dunn Jaguar to the terms of the documents. We disagree.

It is well established that "[w]here the trial judge sits as the trier of facts, his findings of fact are conclusive on appeal when supported by competent evidence. This is true even though there may be evidence in the record to the contrary which could sustain findings to the contrary." *Institution Food House v. Circus Hall of Cream*, 107 N.C. App. 552, 556, 421 S.E.2d 370, 372 (1992) (*quoting General Specialties Co. v. Teer Co.*, 41 N.C. App. 273, 275, 254 S.E.2d 658, 660 (1979)). The trial court's judgment will not be disturbed on appeal if *any* evidence exists which supports the judgment. *Whitaker v. Earnhardt*, 289 N.C. 260, 221 S.E.2d 316 (1976) (emphasis added).

There are three situations in which a principal is liable upon a contract duly made by its agents: when the agent acts within the scope of his or her actual authority; when the agent acts within the scope of his or her apparent authority, and the third person is without notice that the agent is exceeding actual authority; and when a contract, although unauthorized, has been ratified. *Investment Properties v. Allen*, 283 N.C. 277, 196 S.E.2d 262 (1973); *Foote & Davies, Inc. v. Arnold Craven, Inc.*, 72 N.C. App. 591, 324 S.E.2d 889 (1985).

**[1]**  Plaintiff first contends that Joe Parker had actual authority to execute the guaranty because plaintiff believed that he was general manager of Robert C. Dunn's automobile dealerships and that he signed the guaranty as vice-president. Plaintiff's argument, however, ignores significant facts.

In the instant case, the trial court found that Joe Parker signed the guaranty; that Joe Parker was not an employee, officer or director of Dunn Jaguar; that Joe Parker was not authorized to execute documents on behalf of Dunn Jaguar; and that plaintiff had failed to obtain the Signature Authorization or Directors' Resolution according to their own policy. Barbara Tilley, vice president and manager of the leasing section of Wachovia, testified that it was standard practice to require Signature Authorizations or Directors' Resolutions soon after plaintiff's representatives' initial visit to a new dealership to acquire a list of people authorized to execute documents. Ms. Tilley also testified that no documentation existed showing that Joe Parker had actual authority to bind defendant Dunn Jaguar.

Plaintiff seeks to show that Joe Parker had authority through Mel Blackwell whom they acknowledge did not have authority. Plaintiff contends that "through Blackwell DUNN JAGUAR permitted Parker to perform the functions of a vice president and that through Blackwell's conduct DUNN JAGUAR both consented to and acquiesced in Parker's execution of the McKeathen documents, including the McKeathen guaranty." Plaintiff acknowledges that Blackwell did not have authority to execute the guaranty and plaintiff's representatives testified that they would not have accepted the guaranty if Blackwell had, in fact, executed the guaranty. Thus, plaintiff's attempts to argue that Mel Blackwell could authorize Joe Parker to execute the guaranty despite the fact that Mr. Blackwell himself was not authorized to execute the guaranties is without merit. Mel Blackwell could not delegate authority to Joe Parker when he himself had no authority to execute guaranties.

**[2]**  Plaintiff next contends that Joe Parker had apparent authority to execute the guaranty. Apparent authority "is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possess." *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 31, 209 S.E.2d 795, 799 (1974). Our Supreme Court has said that whether apparent authority exists depends on the "unique facts" of each case. *Id.* at 32, 209 S.E.2d at 800. "Thus, in a case where the evidence is conflicting, or susceptible to different rea-

sonable inferences, the nature and extent of an agent's authority is a question of fact to be determined by the trier of fact." *Foote & Davies, Inc.*, 72 N.C. App. at 595, 324 S.E.2d at 893. The trial judge having heard all the evidence determined that Joe Parker did not have apparent authority.

Whether the agent acts within the apparent scope of his authority is determined by what the principal does, not by the unauthorized acts and contentions of the agent. *Zimmerman*, 286 N.C. 24, 209 S.E.2d 795. The evidence presented shows that Joe Parker was not the general manager of Dunn Jaguar in 1987 nor at any other time. Additionally, President Robert C. Dunn testified that Mel Blackwell was general manager and that he and three others, not including Joe Parker and Mel Blackwell, were defendant's only officers during that period. Robert C. Dunn also specifically told Joe Parker that he was not authorized to sign guaranties.

Furthermore, there is no evidence showing that defendant held Joe Parker out as having authority to execute guaranties on his behalf. In fact, evidence showed that defendant's president, Robert C. Dunn, met with James Valentine and Bob Earnhardt, Wachovia vice-presidents, and advised them that he did not want any more recourse paper with plaintiff, that no one could execute guaranties on his behalf, and that any guaranties had to have his personal approval and signature. Thus, this communication divested Joe Parker of any authority which may have been imputed to him. In addition, Wachovia failed to follow its own policy by not requiring defendant to execute a Signature Authorization and Directors' Resolution.

Plaintiff's reliance on *Bell Atlantic Tricon Leasing Corp. v. DRR, Inc.*, 114 N.C. App. 771, 443 S.E.2d 374 (1994) in support of its position is misplaced. In *Bell Atlantic*, this Court found that a third party would not be on notice that the president executing a guaranty was exceeding the scope of his authority. *Id.* Plaintiff argues that because it believed Joe Parker was vice president, it was without notice that he was not authorized. In the instant case, unlike the situation in *Bell Atlantic*, there is ample evidence from which plaintiff should have been on notice that Joe Parker was exceeding his authority. Thus, *Bell Atlantic* is inapplicable here.

[3] Plaintiff's third contention is that the court erred in failing to find agency by ratification or estoppel. We disagree. Our Supreme Court has stated:

In order to establish the act of a principal as a ratification of the unauthorized transactions of an agent, the party claiming ratification must prove (1) that at the time of the act relied upon, the principal had full knowledge of all material facts relative to the unauthorized transaction . . . and (2) that the principal had signified his assent or his intent to ratify by word or by conduct which was inconsistent with an intent not to ratify.

*Equipment Co. v. Anders,* 265 N.C. 393, 400-01, 144 S.E.2d 252, 258 (1965).

The evidence shows that Robert C. Dunn was the only person authorized to make and sign guaranties. The evidence also shows that Mr. Dunn did not know of Joe Parker's acts until he was notified in May 1991; he then promptly repudiated the guaranty on behalf of defendant. Thus, there was no ratification of the guaranty.

"Ratification requires intent to ratify plus full knowledge of all material facts. . . . [Ratification] may be express or implied, and intent may be inferred from failure to repudiate an unauthorized act . . . or from conduct on the part of the principal which is inconsistent with any other position than intent to adopt the act." *American Travel Corp. v. Central Carolina Bank,* 57 N.C. App. 437, 442, 291 S.E.2d 892, 895, *disc. review denied,* 306 N.C. 555, 294 S.E.2d 369 (1982) (citation omitted). In the instant case, no evidence exists. Accordingly, defendant Dunn Jaguar is not liable to defendant on the basis that it ratified Joe Parker's actions.

Plaintiff next contends that the trial court erred and abused its discretion by failing to order an award of attorney's fees. We disagree. North Carolina General Statutes § 6-21.2 (1986) limits recovery of attorney's fees to situations where the indebtedness is actually collected. In the case *sub judice,* plaintiff was not entitled to recovery, thus no sums were collected. The court's decision was without error. Plaintiff also contends that the trial court erred and abused its discretion by denying its motions pursuant to Rules 11, 37, and 59 of the North Carolina Rules of Civil Procedure. We disagree.

The trial court correctly denied Rule 11 sanctions against defendant. Plaintiff offers no evidence suggesting that the trial court abused its discretion in denying plaintiff's request for sanctions. *See Central Carolina Nissan, Inc. v. Sturgis,* 98 N.C. App. 253, 390 S.E.2d 730, *disc. review denied,* 327 N.C. 137, 394 S.E.2d 169 (1990). Plaintiff's reliance on Rule 37 is also inapplicable in the instant case because

plaintiff did not compel discovery, but instead sought to prevent discovery by asking for a protective order. In addition, review of a trial court's denial of a motion for new trial is within the discretion of the trial judge and review of his decision "is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge." *Worthington v. Bynum and Cogdell v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982). As stated previously, the trial judge's findings of fact were supported by competent evidence, and its conclusions were properly based on these findings of fact. Thus the trial court did not abuse its discretion in denying plaintiff's Rule 59 motion.

Defendant cross appeals from the 20 September 1993 order denying its Rule 37(c) motion. Rule 37(c) of the North Carolina Rules of Civil Procedure requires:

> *Expenses on failure to admit.*—If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (i) the request was held objectionable pursuant to Rule 36(a), or (ii) the admission sought was of no substantial importance, or (iii) the party failing to admit had reasonable ground to believe that he might prevail on the matter, or (iv) there was other good reason for the failure to admit.

North Carolina General Statutes § 1A-1, Rule 37(c) (1990). In the instant case defendant served requests for admission on plaintiff and plaintiff denied every admission. The trial court found that defendant proved the truth of the matter asserted.

"The choice of sanctions under Rule 37 is within the trial court's discretion and will not be overturned on appeal absent a showing of abuse of that discretion." *Brooks v. Giesey*, 106 N.C. App. 586, 592, 418 S.E.2d 236, 239 (1992), *aff'd*, 334 N.C. 303, 432 S.E.2d 339 (1993). There is no evidence that the trial court abused its discretion in denying defendant's motion, thus the trial court's decision is affirmed.

Defendant also cross appeals from the trial court's denial of its motion to tax the deposition costs against plaintiff as set forth in defendant's affidavit of costs. It is within the trial court's discretion

whether costs are to be taxed. North Carolina General Statutes § 6-20 (1986). Whether deposition expenses may be taxed as part of the costs is also within the trial court's discretion. *Alsup v. Pitman*, 98 N.C. App. 389, 390 S.E.2d 750 (1990). The trial court's discretion will not be disturbed on appeal absent an abuse of discretion. *Id.* Because there is no evidence that the trial court abused its discretion, we affirm the trial court's decision.

For all of the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

Judges MARTIN and THOMPSON concur.