FIRST UNION NATIONAL BANK, Plaintiff v. STEPHEN PAUL BROWN and
GLOBAL SUPPORT SERVICES, INC., Defendants

No. COA03-599

(Filed 19 October 2004)

## 1. Appeal and Error— appealability—interlocutory order—Rule 54(b) certification

Although defendant company's appeal from an order granting summary judgment in favor of plaintiff bank is an appeal from an interlocutory order based on the fact that defendant company's cross-claims against defendant company president are still pending, the appeal is properly before the Court of Appeals because the trial court included a Rule 54(b) certification in its order entering final judgment as to plaintiff's claims against defendant company and defendant company's counterclaims against plaintiff.

## 2. Agency; Corporations— apparent authority—corporate loans and guarantees—personal loan—president's signature

The trial court erred by granting summary judgment in favor of plaintiff bank on the bank's claims to recover money from defendant company after a default on a 1999 guaranty based on defendant company president's signature on the guaranty, because: (1) neither party has offered direct evidence from defendant president or anyone else regarding the actual purpose of the loan or how the proceeds were in fact used, and the Court of Appeals has affirmed summary judgment only when the corporate-related purpose was undisputed; (2) a guaranty of a personal loan is not necessarily outside the apparent authority of an officer of a closely held corporation, and it supplies evidence giving rise to a genuine issue of fact; and (3) the evidence presented an issue of fact as to whether plaintiff bank had notice that defendant president was exceeding his authority when he signed the 1999 guaranty

## 3. Fiduciary Relationship; Fraud— breach of duty of good faith and fair dealing—misrepresentation by concealment

The trial court did not err by granting summary judgment in favor of plaintiff bank on defendant company's counterclaims for breach of the duty of good faith and fair dealing and misrepre-

sentation by concealment, because: (1) if the fact finder concludes that defendant president did not have apparent authority to enter into the guaranty on behalf of defendant company, then defendant company was not induced to enter into the contract by any nondisclosure, and plaintiff bank cannot be said to have accepted the contract without having made a required disclosure; and (2) even if defendant president did have apparent authority to sign a guaranty in defendant company's name, there is no authority suggesting that plaintiff may be held liable for breach of good faith and fair dealing or nondisclosure when negotiating with an officer of a company having apparent authority.

**4. Unfair Trade Practices— use of corporate resolution with other loan documents—duty to disclose—objectively reasonable lawsuit**

The trial court did not err by granting summary judgment in favor of plaintiff bank on defendant company's counterclaim for unfair and deceptive trade practices in violation of N.C.G.S. § 75-1.1, because: (1) plaintiff bank's use of a corporate resolution among the other loan documents that defendant president signed as a condition of the 1997 $250,000 loan was not unfair or deceptive when defendant company failed to present any evidence of harm from the act; (2) plaintiff bank did not owe a duty to the guarantor to disclose information about the principal debtor; and (3) contrary to defendant company's assertion, a lawsuit which is objectively reasonable cannot constitute an unfair trade practice.

Appeal by defendant Global Support Services, Inc. from order entered 13 February 2003 by Judge Robert P. Johnston in Mecklenburg County Superior Court. Heard in the Court of Appeals 4 February 2004.

*Parker, Poe, Adams & Bernstein, L.L.P., by Kiah T. Ford, IV and Maria Blue Barry, for plaintiff-appellee.*

*McKenna Long & Aldridge, L.L.P., by Gaspare J. Bono; and Hutson, Hughes & Powell, P.A., by James H. Hughes, for defendant-appellant Global Support Services, Inc.*

*No brief filed on behalf of defendant Stephen Paul Brown.*

GEER, Judge.

This appeal arises out of a loan by First Union National Bank ("First Union") to defendant Stephen Paul Brown in the amount of

**FIRST UNION NAT'L BANK v. BROWN**

[166 N.C. App. 519 (2004)]

$250,000. In his capacity as President of Global Support Services, Inc. ("Global"), Brown purported to sign a guaranty of this personal loan by Global. When Brown defaulted on the loan, First Union sued Global to enforce the guaranty. Global, contending that Brown lacked authority to sign the guaranty, filed counterclaims against First Union for breach of the covenant of good faith and fair dealing, nondisclosure, and violation of N.C. Gen. Stat. § 75-1.1 (2003). The trial court entered summary judgment for First Union on all of the claims. Based on our review of the record, we conclude that there are genuine issues of material fact on the question of Brown's apparent authority to sign the guaranty, but that Global has failed to forecast sufficient evidence to establish a *prima facie* case on its counterclaims. We therefore reverse the entry of summary judgment in First Union's favor on First Union's claims, but affirm the entry of summary judgment for First Union on Global's counterclaims.

<u>Facts</u>

In September 1997, defendant Brown approached First Union about obtaining a $250,000 personal loan ("the $250,000 loan"). A credit approval request prepared by Mary Smith, a Vice President of First Union, indicated that the loan, which was to be funded 15 December 1997, was for the purpose of "financ[ing] start up operations of tape distribution company" and would be repaid from "cash flow from operations of company" and "personal income and assets of borrower." The credit approval request also specified that the loan would be guaranteed by the company.

On 16 December 1997, Global was incorporated as a Delaware corporation with defendant Brown and Don M. Brindley as co-owners of the company. Brown served as President and Secretary and was responsible for the day-to-day running of the business. Brindley was the Chief Executive Officer. According to Brindley's affidavit, Brown and he agreed that neither of them "could take funds, create debts, guarantee loans, sell shares, or otherwise encumber the assets of Global without the other owner's approval."

During the underwriting of Brown's $250,000 loan and prior to the incorporation of Global, e-mail communications circulated among various First Union loan officers expressing uncertainty as to which officers of Global would be authorized to sign the guaranty. On 16 December 1997, Mary Smith announced that "Paul Brown is going to be the only officer authorized to sign. . . . Paul Brown is CEO, VP & Secretary. Don Brindley will not be signing on the loan at all."

Brown's loan closed on 22 December 1997. On that date, Brown executed three documents: (1) a promissory note in favor of First Union for $250,000 ("the 1997 note"); (2) an unconditional guaranty that purported to bind Global as guarantor of the same loan ("the 1997 guaranty"); and (3) a "Certificate of Borrowing Resolution" on First Union letterhead ("the Certificate"). The 1997 note did not limit the purposes for which the $250,000 could be used and was signed by Brown in his personal capacity. The Certificate, presented by First Union to Brown for the first time on 22 December 1997, stated that it was a "true copy of the Resolution duly adopted by the Board of Directors as of 12/22/97 . . . ." The Certificate, as drafted by First Union, purported to authorize the Global "CEO/President/Secretary" to, among other things, "guarantee the obligations of others to Bank."

Although the Certificate also required Brown to subsequently provide First Union with a certified copy of an actual board resolution, Brown never did so. According to Brindley, he was not aware of the 1997 note or the guaranty signed by Brown on behalf of Global.

On 15 May 1998, Brown obtained a second loan from First Union for $400,000 ("the $400,000 loan"). At that time, Brindley executed an unconditional guaranty, also dated 15 May 1998, by which Brindley personally guaranteed repayment of the $400,000 loan. Brindley believed that Brown had sought this loan in order to obtain sufficient funds to become a co-equal owner of Global.

The 1997 note for the $250,000 loan was renewed and extended on 21 December 1998 by Brown's signature on a new promissory note ("the 1998 note"). Apparently, First Union did not obtain a new guaranty. The 1997 guaranty had provided that Global guaranteed not only the 1997 note but also "all modifications, extensions or renewals thereof." At the time of the 1998 renewal, Brindley was still unaware of the 1997 note, its extension, or Global's guaranty.

Brown never invested the full amount of the $400,000 loan into Global, but rather used a portion of the loan for personal expenses, including the purchase of a home. When the $400,000 became due, Brindley learned that First Union was going to renew the loan in reliance on Brindley's personal guaranty. Brindley called Mary Smith and informed her that he would not guarantee the renewal of the $400,000 loan.

Subsequently, Brindley discovered that Brown had then attempted to secure the $400,000 renewal by Global assets. According

to Brindley's affidavit, he again contacted Smith and "informed her that Global would not secure Brown's loan, and insisted that Global not be obligated to secure Brown's loan." On approximately 1 October 1999, Eileen Hague, a Global employee, also informed Smith that neither Global nor Brindley would renew the guaranty on Brown's $400,000 loan. Smith wrote Brown on 14 December 1999 stating:

> This letter verifies your loan [for $400,000] matured and expired on September 30, 1999. First Union National Bank did not renew this note under its original terms and released the personal guaranty of Mr. Don Brindley as of October 31, 1999.

On 22 December 1999, First Union again renewed and extended the $250,000 loan. Brown signed a promissory note in his individual capacity ("the 1999 note") and also a new "Unconditional Guaranty" as "President" of Global ("the 1999 guaranty"). Smith confirmed in an affidavit that she never spoke with Brindley about the $250,000 loan or the guaranty. Brindley was unaware that Brown had purported to obligate Global by the 1999 guaranty until 2001.

In August 2001, Janet Simpson of First Union called Brindley and informed him that Brown was in default on the $250,000 loan and told him, for the first time, that Global was the guarantor of the note. Brindley protested the guaranty, claiming that Brown had no authority to sign a guaranty on behalf of Global without Brindley's knowledge and approval.

After Global declined to pay the unpaid balance on the $250,000 loan, First Union filed suit on 8 October 2001 against Global and Brown seeking $196,337.96 plus interest. First Union brought suit only on the 1999 note and the 1999 guaranty. The complaint does not mention the 1997 note, the 1997 guaranty, or the 1998 note. Global not only answered the complaint, but asserted counterclaims against First Union for unfair and deceptive trade practices, breach of the duty of good faith and fair dealing, and misrepresentation by concealment. Global also brought cross-claims against Brown for breach of contract, breach of fiduciary duty/constructive fraud, misrepresentation by concealment, and conversion/unjust enrichment.

First Union moved for summary judgment against both Global and Brown. Global cross-moved for summary judgment on its counterclaims. On 13 February 2003, the trial court granted First Union's motion for summary judgment and entered judgment against Global

in the amount of $240,574.85, including principal, interest, and attorney's fees. The court also entered judgment in favor of First Union on Global's counterclaims. In a separate document, also filed on 13 February 2003, the court entered a consent judgment in the amount of $240,574.85 on behalf of First Union and against Brown. Global has appealed from the order granting summary judgment in favor of First Union.

**[1]** We first note that since Global's cross-claims against Brown are still pending, this appeal is interlocutory. *Mitsubishi Elec. & Elecs. USA, Inc. v. Duke Power Co.*, 155 N.C. App. 555, 559, 573 S.E.2d 742, 745 (2002). An interlocutory appeal is permissible only if (1) the trial court certified the order under Rule 54(b) of the Rules of Civil Procedure, or (2) the order affects a substantial right that would be lost without immediate review. *Embler v. Embler*, 143 N.C. App. 162, 164-65, 545 S.E.2d 259, 261 (2001). Since the trial court included a Rule 54(b) certification in its order entering final judgment as to First Union's claims against Global and Global's counterclaims against First Union, this appeal is properly before this Court.

I

**[2]** Global first contends that the trial court erred in granting summary judgment to First Union on the 1999 guaranty on the grounds that Brown's signature on the guaranty could not bind Global. Global further contends that it was entitled to summary judgment on First Union's claims.

The North Carolina Rules of Civil Procedure provide that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). In deciding the motion, " 'all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion.' " *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (quoting 6 James W. Moore, *Moore's Federal Practice* § 56-15[3], at 2337 (2d ed. 1971)).

The party moving for summary judgment has the burden of establishing the lack of any triable issue. *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). Once the moving party meets its burden, then the non-moving party must "produce a forecast of evidence demonstrating that the plaintiff

will be able to make out at least a prima facie case at trial." *Id.* at 66, 376 S.E.2d at 427. In opposing a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." N.C.R. Civ. P. 56(e).

On appeal, this Court's task is to determine, based on the materials presented to the trial court, whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. *Oliver v. Roberts*, 49 N.C. App. 311, 314, 271 S.E.2d 399, 401 (1980), *cert. denied*, 276 S.E.2d 283 (1981). A trial court's ruling on a motion for summary judgment is reviewed *de novo* as the trial court rules only on questions of law. *Va. Elec. & Power Co. v. Tillett*, 80 N.C. App. 383, 384-85, 343 S.E.2d 188, 191, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986).

Because First Union's complaint does not mention the 1997 guaranty, but sought only to enforce the 1999 guaranty, we address only Global's liability under the 1999 guaranty. Global argues initially that it cannot, as a matter of law, be bound under that guaranty because of N.C. Gen. Stat. § 55-8-32 (2003):

> (a) Except as provided by subsection (c), a corporation *may not* directly or indirectly lend money to or guarantee the obligation of a director of the corporation *unless*:
>
> (1) The particular loan or guarantee is approved by a majority of the votes represented by the outstanding voting shares of all classes, voting as a single voting group, except the votes of shares owned by or voted under the control of the benefited director; or
>
> (2) The corporation's board of directors determines that the loan or guarantee benefits the corporation and either approves the specific loan or guarantee or a general plan authorizing loans and guarantees.

(Emphasis added) As, however, First Union correctly points out, when the North Carolina Business Corporations Act, of which N.C. Gen. Stat. § 55-8-32 is a part, refers to a "corporation," it means only an entity incorporated under North Carolina law:

> "Corporation" or "domestic corporation" means a corporation for profit or a corporation having capital stock that is incorporated

under or subject to the provisions of this Chapter and that is not a foreign corporation except that in G.S. 55-9-01 and G.S. 55-15-21 "corporation" includes domestic and foreign corporations.

N.C. Gen. Stat. § 55-1-40(4) (2003). When the Act intends to refer to a foreign corporation, it uses the term "[b]usiness entity." N.C. Gen. Stat. § 55-1-40(2a) (2003). Since N.C. Gen. Stat. § 55-8-32 sets out restrictions only on "corporations" and not on "business entities," it does not apply to Global, a Delaware corporation.[1]

First Union argues that Global's guaranty of Brown's loan was not necessarily unlawful under the applicable Delaware law. While the North Carolina statute uses a "may not . . . unless" construction with respect to corporate loans and guaranties, the applicable Delaware statute uses a broader "may . . . whenever" construction:

> Any corporation *may* lend money to, or guarantee any obligation of, or otherwise assist any officer or other employee of the corporation or of its subsidiary, including any officer or employee who is a director of the corporation or its subsidiary, *whenever*, in the judgment of the directors, such loan, guaranty or assistance may reasonably be expected to benefit the corporation. The loan, guaranty or other assistance may be with or without interest, and may be unsecured, or secured in such manner as the board of directors shall approve, including, without limitation, a pledge of shares of stock of the corporation. Nothing in this section contained shall be deemed to deny, limit or restrict the powers of guaranty or warranty of any corporation at common law or under any statute.

Del. Code Ann. tit. 8, § 143 (2004) (emphasis added).

We agree with First Union that the plain language of the Delaware statute does not prohibit First Union from arguing that Brown had

---

1. Global asserts that "First Union cannot seriously argue that North Carolina common law applies to this dispute with Global, but that a North Carolina statute, which is not favorable to its position, does not. First Union cannot pick and choose which North Carolina law it believes governs this case." Global has mistaken the issue. We are not addressing a question of choice of law, but rather a question of statutory construction. If the General Assembly chooses not to include foreign corporations within the scope of N.C. Gen. Stat. § 55-8-32, it is irrelevant that North Carolina common law might otherwise apply. Global argues alternatively that Fla. Stat. § 607.0833 (2003) should apply because Global's principal place of business is in Florida. As with the North Carolina statute, however, the Florida statute applies only to a corporation, which "means a corporation for profit, which is not a foreign corporation, incorporated under or subject to the provisions of this act." Fla. Stat. § 607.01401(5) (2003).

authority to bind Global to a guaranty. Neither party, however, addresses a necessary preliminary question: which state's common law should we apply on the issue of Brown's authority? Since the parties in this case both assume the applicability of North Carolina common law, we will proceed accordingly. *Tennessee Carolina Transp., Inc. v. Strick Corp.*, 283 N.C. 423, 431, 196 S.E.2d 711, 716 (1973) ("However, in the case before us the parties have not contended that any law other than the law of Pennsylvania shall govern. We proceed accordingly . . . .").

As this Court explained in *Foote & Davies, Inc. v. Arnold Craven, Inc.*, 72 N.C. App. 591, 595, 324 S.E.2d 889, 892 (1985):

> A principal is liable upon a contract duly made by its agent with a third person in three instances: when the agent acts within the scope of his or her actual authority; when a contract, although unauthorized, has been ratified; or when the agent acts within the scope of his or her apparent authority, unless the third person has notice that the agent is exceeding actual authority.

First Union does not dispute that Global has submitted evidence that Brown was not authorized to sign the guaranty and does not contend that Global ratified the guaranty. First Union instead relies solely on Brown's apparent authority.

First Union contends that summary judgment was proper under *Zimmerman v. Hogg & Allen, P.A.*, 286 N.C. 24, 209 S.E.2d 795 (1974), on the grounds that the president of a close corporation always has apparent authority to bind a corporation by signing a contract. First Union has, however, overlooked two critical aspects of *Zimmerman*. First, the Supreme Court in *Zimmerman* held only that evidence such as that relied upon by First Union in this case was sufficient to give rise to an issue of fact warranting *denial of the motion for summary judgment. Id.* at 40, 209 S.E.2d at 805 ("Plaintiff met the burden imposed upon him by Rule 56(c), and, therefore, the trial judge erred by rendering summary judgment in favor of [the principal]."). *Zimmerman* did not hold that evidence of the signature of a president of a close corporation warrants resolution of apparent authority as a matter of law. This Court has noted, relying upon *Zimmerman*, that "[t]he law of apparent authority usually depends upon the unique facts of each case . . . ." *Foote & Davies*, 72 N.C. App. at 595, 324 S.E.2d at 893. In cases in which "the evidence is conflicting, or susceptible to different reasonable inferences, the nature and extent of an agent's authority is a question of fact to be determined by

the trier of fact." *Id.* The question is one of law for the court only "[w]here different reasonable and logical inferences may not be drawn from the evidence . . . ." *Id.*

Second, *Zimmerman* recognized that the president's apparent authority only extends to matters " 'that are within the corporation's ordinary course of business.' " *Zimmerman*, 286 N.C. at 32, 209 S.E.2d at 800 (quoting *Burlington Indus., Inc. v. Foil*, 284 N.C. 740, 758, 202 S.E.2d 591, 603 (1974)). When a president's act " 'relates to material matters that are outside the corporation's ordinary course of business, in the absence of express authorization for such act by the board of directors, the corporation is not bound.' " *Id.* (quoting *Burlington Indus.*, 284 N.C. at 759, 202 S.E.2d at 603). This Court has since held: "The president of a corporation is the head and general agent of the corporation and may act for it in matters that are within the corporation's ordinary course of business or incidental to it." *Foote & Davies*, 72 N.C. App. at 596, 324 S.E.2d at 893. *See also Bell Atl. Tricon Leasing Corp. v. DRR, Inc.*, 114 N.C. App. 771, 775, 443 S.E.2d 374, 376 (1994) ("The law of this state is clear as to the apparent authority of the president of a closely held corporation to enter into contracts for the corporation. The president of the corporation is the head and general agent of the corporation and may act for it in matters that are within the corporation's ordinary course of business or incidental to it."); *Sentry Enters., Inc. v. Canal Wood Corp.*, 94 N.C. App. 293, 297, 380 S.E.2d 152, 155 (1989) ("The president of a corporation has the apparent authority to bind the corporation to contracts which are within the corporation's ordinary course of business.").

Here, Brown was the president of Global, a closely held corporation. For First Union to be entitled to summary judgment based on Brown's apparent authority, the undisputed evidence and all inferences drawn from that evidence must establish that the 1999 guaranty was in the corporation's ordinary course of business or incidental to it. Our review of the evidence indicates that a genuine issue of material fact exists as to this question.

Neither party has offered direct evidence from Brown or anyone else regarding the actual purpose of the loan or how the proceeds were in fact used.[2] First Union points to the credit request application that its employee completed in 1997 indicating that the original

---

2. Global relies on its own unverified answers to First Union's request for admissions, but presents no authority allowing a party to rely upon its own unverified discovery responses in opposing summary judgment. *See* N.C.R. Civ. P. 56(c).

$250,000 loan was for the initial capitalization of Global. We observe that neither the form nor any affidavit indicates the source of this information. Since Global has not objected to consideration of this statement, we consider it as evidence supporting First Union's position. On the other hand, the $250,000 loan from 1997—closed three months after completion of the credit request form—was a personal loan and was not restricted to any particular purpose. By the time Brown signed the 1999 note and guaranty, the sole contracts at issue here, First Union had already loaned Brown an additional $400,000 for the capitalization of Global and had, in the loan documents, restricted use of the loan proceeds to Global's business. Global has also offered evidence that Brown never made the required investment to be a co-equal owner of Global. The evidence produced by both parties, although hardly substantial, is sufficient to raise an issue of fact regarding the purpose of the loan.

In *Zimmerman*, our Supreme Court held that the defendant's affidavits—stating (1) that the agent's investment activity was in the agent's personal capacity, (2) that the partnership was not in the business of making investments, and (3) that it knew nothing of the agent's activity—were sufficient to support the contention that the agent was not acting within the scope of his apparent authority. 286 N.C. at 37-38, 209 S.E.2d at 803. On the other hand, the *Zimmerman* plaintiff's evidence—suggesting (1) that the investment acts brought good will to the partnership and (2) that the firm in fact knew of them—"raised a genuine material issue for trial" and required reversal of the trial court's order granting summary judgment. *Id.* at 39-40, 209 S.E.2d at 804-05. This case presents a similar conflict in the evidence.

This Court has affirmed summary judgment only when the corporate-related purpose was undisputed. Thus, in *Foote & Davies*, 72 N.C. App. at 597, 324 S.E.2d at 893-94, the president of the defendant company had signed a guaranty in connection with a contract for the printing of a catalog for a wholly-owned subsidiary of the defendant company. Similarly, in *Bell Atlantic Tricon*, the president of the defendant corporation, which owned a fleet of trucks, had signed a guaranty of a business equipment lease for an affiliate corporation existing solely for the purpose of servicing those trucks. This Court held that the lease agreement was incidental to the defendant's business. *Bell Atlantic Tricon*, 114 N.C. App. at 775, 443 S.E.2d at 377. In both of these cases, the purpose of the guaranty and the guaranty's relationship to the defendant corporation's business interests were

undisputed. That is not the case here and, therefore, the trial court erred in granting summary judgment to First Union.

Global, however, contends that it was entitled to summary judgment on First Union's claims since the evidence is undisputed that the $250,000 loan was a personal loan. A guaranty of a personal loan is not necessarily outside the apparent authority of an officer of a closely held company. In *Investors Title Ins. Co. v. Herzig*, 320 N.C. 770, 774-75, 360 S.E.2d 786, 789 (1987), the Supreme Court held that the fact a partner in a law firm executed a title certificate on property that he owned for the purpose of obtaining a personal loan for himself did not establish as a matter of law that the partner's act "was not for carrying on the business of the partnership." Affidavits that the law firm had no knowledge of its partner's act and that it was done solely for the partner's personal benefit instead "create[d] a genuine issue of material fact on this question" of apparent authority. *Id.* at 775, 360 S.E.2d at 789. Likewise, the fact that the loan involved in this case was a personal one supplied evidence giving rise to a genuine issue of fact; it is not dispositive.

In addition to the dispute over the purpose of the loan, a dispute exists regarding First Union's knowledge of Brown's authority. A principal is not liable to a third person if "the third person has notice that the agent is exceeding actual authority." *Foote & Davies*, 72 N.C. App. at 595, 324 S.E.2d at 892. We hold that the evidence raises an issue of fact as to whether First Union had notice that Brown was exceeding his authority when he signed the 1999 guaranty. Global offered evidence that both Brindley and another Global employee told First Union prior to the signing of the 1999 guaranty that Brown had no authority to bind Global with respect to the $400,000 loan. In addition, Global points to evidence that First Union's internal procedures required authorization by Global's board of directors as a prerequisite to the loan and yet never obtained from Brown a certified copy of the actual board resolution. A jury could reasonably conclude, in light of these facts, that First Union, in the exercise of reasonable care, was not justified in believing that Brown had authority to bind Global through the 1999 guaranty. *See Zimmerman*, 286 N.C. at 31, 209 S.E.2d at 799 ("[T]he determination of a principal's liability in any particular case must be determined by what authority the third person in the exercise of reasonable care was justified in believing that the principal had, under the circumstances, conferred upon his agent."). First Union urges that the 1999 notification was limited to the $400,000 loan, while Global contends that the 1999 notification

should be dispositive as to its liability. Both arguments are more properly presented to a jury.

Global relies on *Wachovia Bank v. Bob Dunn Jaguar, Inc.*, 117 N.C. App. 165, 172, 450 S.E.2d 527, 532 (1994), in which the president of Bob Dunn Ford notified Wachovia that any guaranties had to have his personal approval and signature. Subsequently, a new corporation called Bob Dunn Jaguar was formed as a subsidiary of Bob Dunn Ford. Wachovia sought to enforce a guaranty signed by a vice president of Bob Dunn Ford for a Jaguar sold by Bob Dunn Jaguar. This Court affirmed the trial court's decision not to enforce the guaranty on the grounds that the earlier communication regarding guaranties and Bob Dunn Ford "divested [the vice president] of any authority which may have been imputed to him." *Id.* In response to Wachovia's claim that it was entitled to rely upon its belief that the guaranty signer's status as vice president authorized him to sign guaranties, the court held that the communication from the president provided "ample evidence from which plaintiff should have been on notice that [the vice president] was exceeding his authority." *Id.* While Global urges that *Bob Dunn Jaguar* justifies entry of summary judgment in its favor, it overlooks the fact that the trial court's decision in *Bob Dunn Jaguar* was reached after a bench trial.

For the foregoing reasons, we hold that neither party was entitled to summary judgment on First Union's claims. Genuine issues of material fact exist regarding whether Brown was acting within his apparent authority and whether First Union was on notice that Brown was exceeding his authority when he signed the 1999 guaranty.

## II

Global next contends that the trial court erred in granting summary judgment to First Union on its counterclaims. We hold that the trial court properly concluded that Global failed to forecast sufficient evidence to support its counterclaims.

[3] Global first contends that First Union breached a duty of good faith and fair dealing and made a material misrepresentation by concealment when it failed to disclose that Brown was signing a guaranty on behalf of Global for a personal loan to Brown. Global argues that First Union should not have accepted a guaranty signed by Brown without verifying that he had authority to act when First Union had reason to believe that Global was being misled by Brown.

This Court has previously held that "in some instances a creditor owes a duty to the guarantor to disclose information about the principal debtor." *Gant v. NCNB Nat'l Bank of N.C.*, 94 N.C. App. 198, 199, 379 S.E.2d 865, 867, *appeal dismissed and disc. review denied*, 325 N.C.706, 388 S.E.2d 453 (1989). Specifically,

> "[i]f the creditor knows, or has good grounds for believing that the surety [or guarantor] is being deceived or misled, or that he is induced to enter into the contract in ignorance of facts materially increasing the risks, of which he has knowledge, and he has an opportunity, before accepting his undertaking, to inform him of such facts, good and fair dealing demand that he should make such disclosure to him; and if he accepts the contract without doing so, the surety [or guarantor] may afterwards avoid it."

*Id.* at 199-200, 379 S.E.2d at 867 (quoting *First-Citizens Bank & Trust Co. v. Akelaitis*, 25 N.C. App. 522, 526, 214 S.E.2d 281, 284 (1975); alteration in original).

It is unclear whether a breach of this duty to disclose is more properly labeled a breach of the covenant of good faith and fair dealing or a claim for negligent nondisclosure. *See Gant*, 94 N.C. App. at 200, 379 S.E.2d at 867 ("Plaintiff has alleged sufficient facts to state a claim against defendant, whether the cause of action is ultimately determined to be one for negligence or 'breach of duty of good faith,' as plaintiff has labeled her claims."). Although Global has asserted separate counterclaims for breach of the duty of good faith and fair dealing and "misrepresentation by concealment," it relies in each counterclaim on *Gant* to provide a duty to speak and points to the same facts as supporting each claim. We, therefore, address the counterclaims together.

The facts of this case do not fall within the scope of *Gant*. If the finder of fact concludes that Brown did not have apparent authority to enter into the guaranty on behalf of Global, then Global never entered into a guaranty of Brown's loan. Accordingly, Global was not "induced to enter into the contract" by any non-disclosure and First Union cannot be said to have "accept[ed] the contract" without having made a required disclosure. *Id.* at 199-200, 379 S.E.2d at 867. On the other hand, if Brown did have apparent authority to sign a guaranty in Global's name, the question arises whether First Union had a duty to make a disclosure to someone other than an agent of Global. Global has cited no authority suggesting that First Union may be held liable for a breach of good faith and fair dealing or non-disclosure

when negotiating with an officer of a company having apparent authority. We have found none. *See Furman Lumber, Inc. v. Mountbatten Sur. Co.*, No. 96-7906, 1997 U.S. Dist. LEXIS 12118, at *35 (E.D. Pa. Aug. 6, 1997) (creditors who had made the required disclosure to an agent of the guarantor "were under no duty to take any further affirmative action").

[4] Second, Global contends that the trial court erred in granting summary judgment to First Union on Global's counterclaim for unfair or deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1. Global points to the following acts as constituting violations of N.C. Gen. Stat. § 75-1.1: (1) "First Union's preparation and presentment of a fictitious corporate resolution[;]" (2) First Union's renewal of the corporate guaranty without disclosing it to Global; and (3) the filing and pursuit of this action.

In order to establish a claim under N.C. Gen. Stat. § 75-1.1, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." *Id.* Although it is a question of fact whether the defendant performed the alleged acts, it is a question of law whether those acts constitute an unfair or deceptive trade practice. *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252-53, 507 S.E.2d 56, 63 (1998). In a business context, this question is determined based on the likely effect on "the average businessperson." *Bolton Corp. v. T. A. Loving Co.*, 94 N.C. App. 392, 412, 380 S.E.2d 796, 808, *disc. review denied*, 325 N.C. 545, 385 S.E.2d 496 (1989).

First Union's use of the "corporate resolution" among the other loan documents that Brown signed as a condition of the 1997 $250,000 loan was not unfair or deceptive within the meaning of N.C. Gen. Stat. § 75-1.1. Global never saw this corporate resolution until this litigation and provides no explanation how the resolution could have deceived it or how it harmed Global. *See Melton v. Family First Mortgage Corp.*, 156 N.C. App. 129, 135, 576 S.E.2d 365, 370 (bank's backdating of loan application documents could not support claim under N.C. Gen. Stat. § 75-1.1 when plaintiff failed to present any evidence of harm from act), *aff'd per curiam*, 357 N.C. 573, 597 S.E.2d 672 (2003).

J&M AIRCRAFT MOBILE T-HANGAR, INC. v. JOHNSTON CTY. AIRPORT AUTH.

[166 N.C. App. 534 (2004)]

Global also contends that the same facts supporting its claim for breach of the covenant of good faith and fair dealing supports a claim for unfair and deceptive trade practices. For the same reasons that we held summary judgment was appropriate as to that counterclaim, we also hold those facts are insufficient to establish a claim under N.C. Gen. Stat. § 75-1.1.

Finally, Global argues that First Union's pursuit of this lawsuit constitutes an unfair and deceptive trade practice. In *Reichhold Chems., Inc. v. Goel,* 146 N.C. App. 137, 157, 555 S.E.2d 281, 293 (2001), *appeal dismissed,* 356 N.C. 677, 577 S.E.2d 635, *disc. review denied,* 356 N.C. 677, 577 S.E.2d 634 (2003), this Court held that a lawsuit which is "objectively reasonable" cannot constitute an unfair trade practice under N.C. Gen. Stat. § 75-1.1. Since Global has not demonstrated that this lawsuit was objectively unreasonable, it cannot form a basis for an unfair and deceptive trade practices claim.

### Conclusion

We hold that the record reveals genuine issues of material fact with respect to First Union's claim for relief against Global and, therefore, reverse the trial court's entry of summary judgment in favor of First Union on that claim and remand this matter for such further proceedings as may be appropriate. We affirm the trial court's entry of summary judgment as to Global's counterclaims.

Affirmed in part, reversed in part and remanded.

Chief Judge MARTIN and Judge STEELMAN concur.