BROWN, J., did not sit and took no part in the decision; WALKER, J., concurred in the opinion of CLARK, C. J.; HOKE, J., dissented.
The facts are sufficiently stated in the opinion of the Court by MR. CHIEF JUSTICE WALKER.
The Merchants and Farmers Bank of Dunn executed its note to the plaintiff bank for $10,000 borrowed money, and deposited as collateral security a note which had been executed to it for $10,000, signed (303) "Dunn Oil Mills Company, by J. D. Barnes, President." This note was indorsed to the plaintiff before maturity by the Merchants and Farmers Bank of Dunn failed, and this action was brought against the said oil mills on its said note. The defendant oil mills pleads that it received no consideration for the same and that its president, J. D. Barnes, was not authorized to sign said note.
The defendant relied upon a provision in its by-laws: "All other contracts shall be in writing and signed by the president, or vice president, secretary and treasurer." The "secretary and treasurer" was one office. A fair construction of the by-law is that the writing should be signed by the president or vice president or secretary and treasurer. This note was signed by J. D. Barnes, president. His Honor erred, therefore, in his intimation that the note in question was not binding upon the Oil Mills Company.
But upon the broader question which was argued before us, whether, if the by-law meant to require the secretary and treasurer and the president to sign all contracts, the company would be bound by a note signed by its president, in the absence of proof that the plaintiff had notice of such by-law, we are of opinion that the Oil Mills Company is bound by the promissory note which was issued in ordinary course of dealing and signed by its president. Nothing is more common than for mercantile and negotiable paper to be signed by the president or secretary and treasurer of a corporation.
The well-settled rule of law is that where one of two innocent parties must suffer by the act of another, that one which has put it in the power of the wrongdoer to commit the act must bear the loss. R. R. v. Barnes,104 N.C. 25. The Oil Mills Company elected J. D. Barnes *Page 243 
its president and thus put it in his power, according to the usual custom, to sign notes. If he abused his trust, the loss must fall upon the company which selected him and put him in that situation. For its own protection the company passed the above by-law. If it intended thereby to prescribe that its note should be signed by the secretary and treasurer as well as by its president or vice-president, it was (304) competent for it to make such regulation. But such regulation would not affect the plaintiff bank, which took the note for value and before maturity, without notice of such regulation and relying upon the usual custom that mercantile paper can be signed by the president or general manager of a corporation.
In Davis v. Insurance Co., 134 N.C. 60, this Court said that the president was "the general representative of the company," and in Grabbs v.Insurance Co., 125 N.C. 389, it is said that the expression "general agent" implied general powers. It has also been held that a general agent can make contracts for the company. Grabbs v. Insurance Co., supra;Gwaltney v. Assurance Society, 132 N.C. 925; Davis v. Insurance Co.,supra.
It is no defense against a holder for value without notice that the officer exceeded his authority. 7 Cyc., 625.
"Where a party deals with the corporation in good faith, the transaction is not ultra vires, and if he is unaware of any defect of authority or other irregularity on the part of those acting for the corporation, and there is nothing to excite suspicion of such defect or irregularity the corporation is bound by the contract, although such defect or irregularity in the authority exists." Bank v. Bank, 10 Wallace, 644.
"The bona fide holder for value of notes taken before maturity can recover against the corporation notwithstanding any want of authority of the agent to execute these notes for the purpose for which they were given.Bird v. Daggert, 97 Mass. 494.
The general rule that a person dealing with an agent must know the extent of his authority does not apply when dealing with one who is a general agent, as the president of a corporation. In such case the burden is upon the principal to show that the other party had notice of a restriction upon the power of the general agent. The promissory note of this corporation was not ultra vires. There is no prohibition in the law against such a corporation issuing its promissory negotiable note.
In Hutchins v. Bank, 128 N.C. 72, the Court held that a contract of guarantee by a bank cannot be avoided on the ground of ultra vires, and held that even where a contract is ultra vires the corporation will be bound if the contract was within the general scope of its (305) powers and has been wholly or partially executed. In that case this Court said, citing Bank v. Bank, 101 U.S. 183: "It is to be *Page 244 
presumed that the vice president had rightfully the power he assumed to exercise, and the defendant is estopped to deny it."
The president of a corporation has an implied power to indorse and transfer its negotiable paper. Indeed, in the case of National banks the president is authorized by statute to indorse the paper of the bank. Daniel Neg. Inst., sec. 394.
Unlike mining companies, as to which cases have been cited, and who buy very little except machinery, oil mills need considerable quantities of money for the purchase of cotton seed from time to time. Indeed, they have need to issue negotiable bills far more than banks, cotton factories, and railroads. It is a matter of common knowledge that they obtain this money by issuing promissory notes, usually to the banks, as in this case. Besides, the charter of the defendant authorizes it to buy cotton and cotton seed, to gin cotton, to manufacture cottonseed oil, cotton-seed meal, to buy and sell cattle, hogs, and other stock, to manufacture ice, to buy and sell real estate and personal property, and, in addition, specifically authorizes the defendant "to borrow money in such amounts and at such times to carry on the business of this corporation as the proper officer may deem proper." There is also authority to manufacture, buy and sell fertilizers. These things certainly authorized the making of negotiable paper in the course of its business.
Though the defendant here pleaded that it received no consideration for this paper, this was not shown in evidence. The note sued on was strictly commercial and negotiable in form under our statute; the plaintiff, a bank in a distant town, is a purchaser for value in due course; the note was put in circulation through the agency of a bank in the town where the oil mills were located and with which the oil mills had dealings; it was put in circulation and signed by the oil mills through its chief officer. The purchaser in such case in due course, knowing the course of dealing by oil mills in getting money from the banks, was not required to hunt up and read the by-laws of the oil mills before purchasing, especially since reference to the charter would have (306) shown that the making of negotiable paper and the borrowing of money was within the scope of the powers of the defendant.
The true doctrine is stated in Bank v. Bank, 10 Wallace, 64: "That such acts of an officer of a corporation as are usually performed by that officer are valid as against the corporation in favor of innocent parties, although the act in the particular instance was beyond the authority of the officer." Banks do not usually issue promissory notes or borrow money, yet they are bound by the act of their cashiers in certifying checks falsely.
The plaintiff bank in Wilmington in taking this paper, indorsed by *Page 245 
the Bank of Dunn, with which the oil mills at Dunn were in the habit of doing business, was not guilty of negligence in assuming that the paper was signed by the proper officer of the oil mills and was issued in the course of its ordinary dealings with its regular bank. There is nothing in this evidence to show that the oil mills did not obtain full value. At any rate, it was the act of the oil mills, acting through its chief officer, that the paper was put in circulation and the plaintiff bank took it in due course, for value and without notice, and as such is protected by the statute.
Our conclusion is that the president of the corporation being its general agent, the promissory note executed by him in its name was primafacie valid, and being indorsed to the plaintiff before maturity for value and without notice, the corporation is bound by the act of its president, unless it were shown that the plaintiff had notice of a restriction upon the powers of the president as such general agent.
In Watson v. Manufacturing Co., 147 N.C. 475, this Court quoted with approval the following language from Thompson on Corporations, 8556: "A stranger dealing with the corporation is not affected by secret restrictions upon the powers of a general manager of which he has no notice. In short, the powers of one who has been appointed general manager of the business of the corporation are, in America, generally understood to be coextensive with the general scope of its business. . . . A person dealing with the corporation through him may safely act on the assumption of his possessing the power in the absence (307) of anything indicating a want of it."
In Mershon v. Morris, 148 N.C. 52, this Court approves the following language from Judge Thompson, 10 Cyc., 1003: "Excluding the operation of express statutes, a very extensive principle of the law of corporations, applicable to every kind of written contract executed ostensibly by a corporation, and to every kind of act done by its officers and agents professedly in its behalf, is that, when the officer or agent is the appropriate officer or agent to executed a contract or do an act of a particular kind in behalf of the corporation, the law presumes a precedent authorization, regularly and rightfully made, and it is not necessary to produce evidence of such authority from the records of the corporation: always provided that the corporation itself had the power under its charter or governing statute to execute the contract or to do the act."
The Oil Mills Company had authority to execute promissory notes. The president was ex vi termini its general agent. The plaintiff having taken a promissory note executed by the president of said oil mills, in regular course, before maturity, for value and without notice of any restriction upon the authority of the president to execute said note, the *Page 246 
court below erred in holding that said note was not binding upon said Oil Mills Company. Any other ruling would materially affect dealings in negotiable paper executed by a corporation.
Error.
WALKER, J., concurs in opinion of CLARK, C. J.