FOOTE & DAVIES, INC. v. ARNOLD CRAVEN, INCORPORATED

No. 8418SC314

(Filed 5 February 1985)

**1. Guaranty § 1— guaranty as part of original transaction—consideration**

　　Evidence was sufficient for the jury to find that a guaranty executed by defendant was negotiated and agreed to as part of the original transaction between the parties and thus was supported by adequate consideration where the evidence tended to show that plaintiff agreed to print catalogs for defendant's mail order business on credit terms requested by defendant but plaintiff would require a guaranty from defendant.

**2. Corporations § 8; Guaranty § 1— president of corporation—authority to guarantee account of subsidiary**

　　Defendant's president had the apparent authority to execute a guaranty binding defendant to pay the debt of its subsidiary to plaintiff where the officers, directors and shareholders of defendant and its subsidiary consisted solely of a mother, father, son and daughter-in-law; the by-laws of defendant authorized the president to sign written contracts of the corporation; defendant wholly owned the subsidiary and stood to benefit from its business; it had on at least five previous occasions guaranteed the obligations of its subsidiary; guaranteeing the account and obtaining advertising materials were in defendant's own interest as well as that of its subsidiary; defendant president stated

that he thought he had the authority as president to bind the corporation to the guaranty; and the president at no time advised plaintiff that the board of directors needed to approve the guaranty.

APPEAL by plaintiff from *Freeman, Judge*. Judgment entered 5 January 1984 in Superior Court, GUILFORD County. Heard in the Court of Appeals 28 November 1984.

Plaintiff appeals from summary judgment for defendant in an action to enforce a guaranty.

*Jackson N. Steele for plaintiff appellant.*

*Haworth, Riggs, Kuhn, Haworth and Miller, by John Haworth and David B. Ashcraft, for defendant appellee.*

WHICHARD, Judge.

Plaintiff contends the court erred in granting defendant's motion for summary judgment, in that defendant's president had either actual, implied, or apparent authority to bind the corporation to its guaranty, and the guaranty was supported by adequate consideration. We hold that there was evidence sufficient to warrant a jury finding that the guaranty signed for the corporation by its president was supported by valuable consideration. We also hold as a matter of law that defendant's president had the apparent if not the actual authority to make a guaranty agreement binding on the corporation.

The test on a motion for summary judgment is whether the materials presented raise an issue of fact so essential that its resolution can defeat a party, of such nature as to affect the outcome of the action, or of such nature as to constitute a legal defense. Summary judgment is proper only if no such factual issue exists. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 534-35, 180 S.E. 2d 823, 830 (1971); *Gillespie v. DeWitt*, 53 N.C. App. 252, 256, 280 S.E. 2d 736, 740, *disc. rev. denied*, 304 N.C. 390, 285 S.E. 2d 832 (1981).

The evidence is as follows:

Defendant-corporation operates a retail clothing store. Three family members—father, mother, and son—are its only stockholders and directors. The father is chairman of the board, the mother is secretary-treasurer, and the son is president. The son

was also president of a mail order sales subsidiary of defendant that did business at another location. Defendant owned all the stock in the subsidiary.

Plaintiff is a printing company. In late 1981 plaintiff's representative solicited a catalog-printing order for the subsidiary from its president. Following negotiations in which plaintiff's representative learned of the son's presidency of both defendant and the subsidiary, final arrangements were made for plaintiff's printing of catalogs for defendant's subsidiary. Plaintiff's representative delivered to the son, as president of defendant's subsidiary, a letter enclosing a proposal along with a proposed letter from defendant guaranteeing its subsidiary's payment for the catalogs. The son accepted and signed the proposal. After having the guaranty typed under the subsidiary's letterhead, the son signed it as defendant's president and mailed it to plaintiff.

Plaintiff later learned that defendant's subsidiary was having difficulty raising sufficient operating capital. After discussions of that situation between defendant's president and plaintiff's representative, plaintiff printed the catalogs. It then billed defendant's subsidiary for approximately $225,000.00. The following day defendant's subsidiary filed a petition for liquidation in Bankruptcy Court in which it listed its debt to plaintiff. Upon demand, neither the subsidiary nor defendant paid the debt.

I.

[1] A guaranty is a promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another person who is liable therefor in the first instance.[1] *Gillespie*, 53 N.C. App. at 258, 280 S.E. 2d at 741, quoting *O'Grady v. Bank*, 296 N.C. 212, 220, 250 S.E. 2d 587, 593 (1978). The en-

---

1. The novelist Charles Dickens, through his character Mr. Pancks, offered the following amusing commentary on guaranty agreements:

> It's no satisfaction to be done by two men instead of one. One's enough. A person who can't pay, gets another person who can't pay, to guarantee that he can pay. Like a person with two wooden legs getting another person with two wooden legs, to guarantee that he has got two natural legs. It don't make either of them able to do a walking match. And four wooden legs are more troublesome to you than two, when you don't want any.

C. Dickens, *Little Dorrit* 319 (Penquin Books ed. 1983).

forceability of the guarantor's promise is determined primarily by the law of contracts. *Id*. at 259, 280 S.E. 2d at 741. Therefore, for a guaranty to be enforceable, it must be supported by consideration. *Id*., 280 S.E. 2d at 742. However, the same consideration may suffice for both the principal obligation or debt and a guaranty if the guaranty is part of the transaction which created the debt it guarantees. *Id*. at 260, 280 S.E. 2d at 742; 38 Am. Jur. 2d *Guaranty* Sec. 44, at 1047 (1968). In that case the extension of credit by the obligee supplies consideration for both the principal debt and the guaranty. *Id*.

We note the following forecast of evidence from the deposition of defendant's president.

Q. Do you have any recollection of whether you first raised the possibility of [defendant] guaranteeing [the subsidiary's] account with [plaintiff] or whether that was raised first by [plaintiff's representative]?

A. No, — I didn't raise that possibility.

Q. Is it your best recollection that [plaintiff's representative] raised it when he indicated that [plaintiff] could give you the credit terms . . . that you requested, but would require a guaranty from [defendant]?

A. That was probably at the point that it was requested. . . . I think that is probably the point that he requested that.

Q. Is that your best recollection of the sequence of events?

A. Uh-huh . . . that . . . would seem to be correct to me.

Further evidence from defendant's president was as follows:

Q. Prior to the time that you and [plaintiff's representative] entered into the agreement for [plaintiff] to print the catalog, he requested a guaranty from [defendant], didn't he?

. . . .

A. He said that our credit — that the credit terms had been approved and that they would like to have the guaranty of [defendant].

Q. And you told him that that wouldn't be any problem?

A. That is correct.

Q. And that you would send it to him later?

A. That's correct.

From this evidence a jury could find that the guaranty was negotiated and agreed to as part of the original transaction and thus was supported by adequate consideration.

## II.

[2] A principal is liable upon a contract duly made by its agent with a third person in three instances: when the agent acts within the scope of his or her actual authority; when a contract, although unauthorized, has been ratified; or when the agent acts within the scope of his or her apparent authority, unless the third person has notice that the agent is exceeding actual authority. *Investment Properties v. Allen*, 283 N.C. 277, 285-86, 196 S.E. 2d 262, 267 (1973). *See* G.S. 55-36(e). Where a third party in good faith and with reasonable prudence deals with an agent having apparent authority, the principal is bound by the agent's acts. *Thompson v. Assurance Society*, 199 N.C. 59, 64, 154 S.E. 21, 24 (1930).

Apparent authority includes authority to do whatever is usual and necessary to transact the business an agent is employed to transact. *Research Corporation v. Hardware Co.*, 263 N.C. 718, 721, 140 S.E. 2d 416, 419 (1965), citing *Wynn v. Grant*, 166 N.C. 39, 47, 81 S.E. 949, 953 (1914). The law of apparent authority usually depends upon the unique facts of each case, *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 32, 209 S.E. 2d 795, 800 (1974), such as the ordinary course of business, the nature and reasonableness of the contract, the officer negotiating it, the size of the corporation, and the number of shareholders. Thus, in a case where the evidence is conflicting, or susceptible to different reasonable inferences, the nature and extent of an agent's authority is a question of fact to be determined by the trier of fact. 3 Am. Jur. 2d *Agency* Sec. 360, at 719 (1962). Where different reasonable and logical inferences may not be drawn from the evidence, the question is one of law for the court. *Id.* at 720. Such is the case here.

The law of this state is clear as to the apparent authority of the president of a closely-held corporation to enter into contracts for the corporation. The president of a corporation is the head and general agent of the corporation and may act for it in matters that are within the corporation's ordinary course of business or incidental to it. *Zimmerman*, 286 N.C. at 32, 209 S.E. 2d at 800; *Burlington Industries v. Foil*, 284 N.C. 740, 758, 202 S.E. 2d 591, 603 (1974).

The officers, directors, and shareholders of defendant and its subsidiary consist solely of a mother, father, son, and daughter-in-law. This kind of small, closely-held corporation has been said by our Supreme Court to "more nearly resemble . . . a partnership than . . . a corporation." *Zimmerman*, 286 N.C. at 33, 209 S.E. 2d at 801. The Court stated:

> "Although the same broad principles of corporation and agency law determine the powers of officers in both close and publicly held corporations, the factual differences in the patterns of operation of the two kinds of corporations lead to wide disparities in the powers the courts actually recognize in corporate officers. In a close corporation, ownership and management normally coalesce; and the participants often conduct their enterprise internally much as if it were a partnership. The courts have seldom articulated a difference in the rules governing officers' powers in close and publicly held corporations; yet they appear in fact to have often cut through the technical legal form of close corporations to reach the results that would be reached if the enterprises were conducted as partnerships. In other words, the courts frequently, and perhaps usually, recognize in officers of a close corporation the same powers that are possessed by partners in a firm under the general rule of partnership law which makes each partner an agent of the firm for the purposes of its business and empowers each partner to bind the firm by acts apparently carried on to further the usual business of the partnership.
>
> "The courts have rather consistently held officers in a close corporation to possess powers to bind the corporation under circumstances which would make a similar holding questionable in a publicly held corporation. . . . In view of

the typical patterns of operation in close corporations, holdings of this kind can usually be reconciled with traditional doctrine by viewing an officer whose powers are questioned as in fact a general manager of the company or as having a general manager's broad powers, or by applying principles of ratification or of authority or apparent authority by acquiescence. In any event, only in rare instances have courts failed to hold a close corporation bound by *inter vivos* contracts entered into by any officer of the corporation."

*Id.* at 33-34, 209 S.E. 2d at 801, quoting 2 O'Neal, Close Corporations Sec. 8.05 (1971).

Here the by-laws of defendant authorize the president to sign written contracts of the corporation. Defendant wholly owned the subsidiary and stood to benefit from its business. It had on at least five previous occasions guaranteed the obligations of its subsidiary, including a guarantee to the previous printer. The catalog of the subsidiary is identified simply by defendant's corporate name. Guaranteeing the account and obtaining the advertising materials thus was in defendant's own interest as well as that of its subsidiary.

Defendant's president stated that he thought he had the authority as president to bind the corporation to the guaranty; he at no time advised plaintiff that the board of directors needed to approve the guaranty. Nothing in the facts and circumstances here would put an ordinarily prudent person on notice that defendant's president was exceeding the scope of his authority. Without such notice, the principal is bound. *Zimmerman*, 286 N.C. at 31, 209 S.E. 2d at 799. Moreover,

[t]he general rule that a person dealing with an agent must know the extent of his authority does not apply when dealing with one who is a general agent, as the president of a corporation. In such case the burden is upon the principal to show that the other party had notice of a restriction upon the power of the general agent.

*Bank v. Oil Co.*, 157 N.C. 302, 304, 73 S.E. 93, 94 (1912); *Zimmerman*, 286 N.C. at 33, 209 S.E. 2d at 800. Defendant here has not carried that burden.

Dubose Steel, Inc. v. BB&T

## III.

We hold as a matter of law, therefore, that defendant's president had the apparent authority to execute a guaranty binding defendant to pay the debt of its subsidiary to plaintiff. We remand for a jury trial on the issue of consideration.

Reversed and remanded.

Judges JOHNSON and PHILLIPS concur.