Rossabi Law PLLC v. Greater Greensboro Ent. Grp., LLC, 2021 NCBC 44.

STATE OF NORTH CAROLINA

GUILFORD COUNTY

ROSSABI LAW PLLC f/k/a ROSSABI
REARDON KLEIN SPIVEY PLLC,

        Plaintiff,

v.

GREATER GREENSBORO
ENTERTAINMENT GROUP, LLC
and N CLUB, LLC,

        Defendants,

and

GREATER GREENSBORO
ENTERTAINMENT GROUP, LLC,

        Third-Party Plaintiff,

v.

AMIEL ROSSABI,

        Third-Party Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 9568

**ORDER AND OPINION ON
AMENDED AND RESTATED MOTION
TO RECONSIDER ORDER AND
OPINION ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

1. **THIS MATTER** is before the Court on the 17 June 2021 filing of Defendants' Amended and Restated Motion to Reconsider Order and Opinion on Defendants' Motion for Summary Judgment (the "Motion") brought pursuant to Rules 54(b) and 56 of the North Carolina Rules of Civil Procedure (the "Rule(s)"). (ECF No. 76.)

2. For the reasons set forth herein, the Court **GRANTS** in part and **DENIES** in part the Motion.

> *Rossabi Law PLLC, by Gavin J. Reardon and Amiel J. Rossabi, for
> Plaintiff Rossabi Law PLLC f/k/a Rossabi Reardon Klein Spivey PLLC
> and Third-Party Defendant Amiel Rossabi.*

*Boydoh & Hale, PLLC, by J. Scott Hale, for Defendant and Third-Party Plaintiff Greater Greensboro Entertainment Group, LLC and Defendant N Club, LLC.*

Robinson, Judge.

## I.    INTRODUCTION

3.    This case involves a dispute between the parties regarding payment to Plaintiff Rossabi Law PLLC ("Plaintiff") for the legal representation of Defendants Greater Greensboro Entertainment Group, LLC ("GGEG") and N Club, LLC ("N Club" and collectively referred to with GGEG as "Defendants") in litigation with the City of Greensboro.  Plaintiff raises two claims against both Defendants: (1) a claim for breach of contract based on an alleged contingent fee agreement between Plaintiff and Defendants for the payment of Plaintiff's legal fees (the "Contingency Agreement"); and (2) an alternative claim for recovery on the basis of *quantum meruit*.  (Compl. ¶¶ 68–85, ECF No. 3.)

## II.    PROCEDURAL BACKGROUND

4.    On 21 August 2020, Defendants filed Defendants' Motion for Summary Judgment (the "Summary Judgment Motion") requesting that the Court grant Defendants summary judgment as to both of Plaintiff's claims.  (ECF No. 56.) Following briefing and oral argument on the Summary Judgment Motion, on 5 May 2021, the Court entered the Order and Opinion on Defendants' Motion for Summary Judgment (the "Order and Opinion").  (Order & Op. Defs.' Mot. Summ. J., ECF No.

70 ["Order & Op."].)[1]  By the Order and Opinion, the Court denied the Summary Judgment Motion as to both claims.

5.     Five days after entry of the Order and Opinion, on 10 May 2021, Defendants filed Defendants' Motion to Reconsider Order and Opinion on Defendants' Motion for Summary Judgment (the "First Motion").  (ECF No. 71.)

6.     On 11 June 2021, Plaintiff filed Plaintiff's Response to Defendants' Motion to Reconsider (the "Response Brief").  (Pl.'s Resp. Defs.' Mot. Reconsider, ECF No. 75 ["Resp."].)

7.     On 17 June 2021, Defendants filed the Motion and separately filed Defendants' Brief in Support of Motion and Amended and Restated Motion to Reconsider Order and Opinion on Defendants' Motion for Summary Judgment (the "Amended Brief in Support").  (Defs.' Br. Supp. Mot. & Am. & Restated Mot. Reconsider Order & Op. Defs.' Mot. Summ. J., ECF No. 77 ["Am. Br."].)

8.     Defendants filed the Motion and Amended Brief in Support seemingly only modifying the First Motion with the addition of one paragraph and in form to bring the First Motion into compliance with Rule 7.2 of the North Carolina Business Court Rules (the "BCR(s)").[2]  (Am. Br. 1.)

---

[1] The Court sets forth herein only the portions of the procedural history relevant to its determination of the Motion.  A more detailed description of the procedural background of this case can be found in the Order and Opinion.  (Order & Op. ¶¶ 35–41.)

[2] BCR 7.2 provides that "[e]ach motion must be set out in a separate document."  The First Motion and its brief in support were filed as a single PDF document.  In other words, the First Motion was not set out in a separate document and therefore not filed in compliance with BCR 7.2.

9. On 17 June 2021, Defendants filed Defendants' Reply Brief in Support of Motion and Amended and Restated Motion to Reconsider Order and Opinion on Defendants' Motion for Summary Judgment (the "Reply") replying to the Response Brief. (Defs.' Reply Br. Supp. Mot. & Am. & Restated Mot. Reconsider Order & Op. Defs.' Mot. Summ. J., ECF No. 78 ["Reply"].)

10. On 18 June 2021, Plaintiff filed Plaintiff's Response to Defendants' Amended Motion to Reconsider noting that in filing the Motion, Defendants seemingly only cured their defect in the form of the First Motion and Plaintiff had no additional arguments to make than those in the Response Brief. (ECF No. 79.) Therefore, Plaintiff did not file an additional response to the Motion.

11. Accordingly, the Court considers the First Motion withdrawn and the Court, considering the Amended Brief in Support, Response Brief, and Reply, rules on the Motion as amended.

12. The Court held a hearing on the Motion on 8 July 2021. (*See* ECF No. 80.) The Motion is now ripe for resolution.

### III. FACTUAL BACKGROUND[3]

13. A central and important dispute in this case, both factually and legally, is whether the Contingency Agreement was actually signed by Defendants' authorized agents. Third-Party Defendant Amiel Rossabi ("Rossabi") provided to the Court a written but unsigned copy of the Contingency Agreement, dated 25 January 2018, which provides in relevant part:

---

[3] The Court does not make findings of fact on the Motion. The Court recites relevant facts, both undisputed and disputed, to provide context for the Court's ruling herein.

[Plaintiff] will represent [Defendants] with respect to the [Cone Denim Action], with the understanding that [Plaintiff] will receive a contingent fee equal to 33¹/₃% of the amount of recovery. The recovery shall mean any compensation GGEG and/or N Club receive, whether through settlement or otherwise related to the [Cone Denim Action]. If some or all of the compensation is not monetary, the value of such compensation shall be calculated to determine the full amount of recovery.

(Aff. Amiel J. Rossabi Ex. J, ECF No. 63.10 ["Contingency Agreement"].)[4]

14.     The Contingency Agreement provided to the Court contains two signature blocks: one for GGEG and one for N Club. (Contingency Agreement 4.) A signed copy of the Contingency Agreement has not been provided to the Court at this time, and Defendants deny that the Contingency Agreement was ever signed on behalf of Defendants. (Aff. Rocco Scarfone ¶¶ 45–46, ECF No. 58[5] ["Scarfone Aff."]; Aff. Jeffrey Furr ¶¶ 30–31, ECF No. 58 ["Furr Aff."].) Defendants also deny that Scarfone or Furr approved the Contingency Agreement. (Furr Aff. ¶33.)

15.     Section 3.3 of GGEG's Operating Agreement (the "Operating Agreement") provides:

The Vice-President of [GGEG] shall be notified of all legal matters including but not limited to leases, contracts, agreements, fees, and major expenditures of [GGEG] prior to their being incurred. "Major Expenditure" is defined as any expenditure exceeding Ten Thousand Dollars ($10,000.00)[.] Prior to entering any of the above or a Major Expenditure, the Vice-President and President shall discuss and mutually agree. Upon the event they do not agree then an agreement will be reached by a Majority in Interest of the Members.

(Scarfone Aff. Ex. 2 § 3.3 ["Operating Agreement"].)

---

[4] "Cone Denim Action" is used herein as defined in the Order and Opinion. (Order & Op. ¶ 18.)

[5] In filing Defendants' brief supporting the Summary Judgment Motion, Defendants filed their supporting brief and exhibits all as one PDF document located at ECF No. 58.

16. The "Majority in Interest" is defined by the Operating Agreement as "any combination of a specified group of Members which, in the aggregate, owns more than 50% of the Percentage Interests of such specified group of Members." (Operating Agreement § 2.1.) At all times relevant to this dispute, GGEG had three members: Rossabi, Rocco Scarfone ("Scarfone"), and Jeffrey Furr ("Furr"), (Scarfone Aff. ¶¶ 2, 6; Furr Aff. ¶ 2), and Scarfone has acted as the President of GGEG and Furr has acted as the Vice President of GGEG, (Scarfone Aff. ¶ 3; Furr Aff. ¶ 3).

17. On 9 October 2015, Rossabi, Furr, and Scarfone signed corporate records titled Minutes of Action Without Meeting by the Members and Managers of Greater Greensboro Entertainment Group, LLC ("GGEG's Minutes"). (Rebuttal Aff. Rocco Scarfone Ex. 11, ECF No. 65 ["Scarfone Rebuttal Aff."].) GGEG's Minutes tend to show that as of 9 October 2015, Furr owned 50%, Scarfone owned 47%, and Rossabi owned 3% of GGEG. GGEG's Minutes are signed by Rossabi. (Scarfone Rebuttal Aff. ¶ 3.) Scarfone testified that the ownership of GGEG did not change between 9 October 2015 and 10 August 2018. (Scarfone Rebuttal Aff. ¶ 3.)

18. By contrast, Rossabi testified in opposition to the Summary Judgment Motion, by way of the submission of the Affidavit of Amiel J. Rossabi (the "Rossabi Affidavit"), that Scarfone held the Majority in Interest. (Aff. Amiel J. Rossabi ¶ 69, ECF No. 63 ["Rossabi Aff."].) The Rossabi Affidavit specifically represents that Scarfone and Furr "ignore key provisions of the GGEG Operating Agreement" and that Scarfone "held the Majority in Interest and he agreed to and signed the written

contingency fee agreement[,]" (Rossabi Aff. ¶ 69), thereby properly binding GGEG to its terms.

## IV. LEGAL STANDARD

19. Under Rule 54(b), an interlocutory ruling, like the Order and Opinion, "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." N.C.G.S. § 1A-1, Rule 54(b). "Rule 54(b) is the source of authority for what litigants typically refer to as 'motions to reconsider.'" *Tetra Tech Tesoro, Inc. v. JAAAT Tech. Servs., LLC*, 250 N.C. App. 791, 798 (2016) (citing *Akeva, L.L.C. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 565 (M.D.N.C. 2005)). "Because North Carolina courts have not articulated a standard for reconsideration under Rule 54(b), this Court has regularly sought guidance from analogous federal cases" addressing the similarly worded Federal Rule of Civil Procedure 54(b). *Charlotte Student Hous. DST v. Choate Constr. Co.*, 2019 NCBC LEXIS 21, at *10 (N.C. Super. Ct. Mar. 26, 2019) (citing *Bohn v. Black*, 2018 NCBC LEXIS 50, at *7 (N.C. Super. Ct. May 16, 2018); *W4 Farms, Inc. v. Tyson Farms, Inc.*, 2017 NCBC LEXIS 99, at *4–5 (N.C. Super. Ct. Oct. 19, 2017)). In doing so, this Court has explained that deciding whether to grant or deny "[a] motion for reconsideration under Rule 54(b) is within the trial court's discretion." *W4 Farms*, 2017 NCBC LEXIS 99, at *5 (citing *Akeva*, 385 F. Supp. 2d at 565; *Ward v. FSC I, LLC*, 2017 NCBC LEXIS 19, at *6 (N.C. Super. Ct. Mar. 7, 2017)).

20. "A motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion

was pending." *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015). This Court has summarized the grounds upon which a trial court will generally grant a motion to reconsider an interlocutory order as follows: "(1) the discovery of new evidence, (2) an intervening development or change in the controlling law, or (3) the need to correct a clear error or prevent manifest injustice." *W4 Farms*, 2017 NCBC LEXIS 99, at *5 (quoting *RF Micro Devices, Inc. v. Xiang*, 2016 U.S. Dist. LEXIS 74550, at *3–4 (M.D.N.C. June 8, 2016)).

21. "The limited use of a motion to reconsider serves to ensure that parties are thorough and accurate in their original pleadings and arguments presented to the Court. To allow motions to reconsider offhandedly or routinely would result in an unending motions practice." *Wiseman v. First Citizens Bank & Tr. Co.*, 215 F.R.D. 507, 509 (W.D.N.C. 2003) (citation omitted). As a result, motions for reconsideration are rarely granted. *See W4 Farms*, 2017 NCBC LEXIS 99, at *5.

## V. ANALYSIS

22. Defendants do not argue that the discovery of new evidence or an intervening change in law warrants reconsidering the Order and Opinion. Defendants contend that reconsideration is appropriate because the Order and Opinion was "based upon clear error" and the Court limits its consideration to this argument. (Am. Br. 2.)

23. Specifically, Defendants contend that the Court's statement in the Order and Opinion that "Scarfone was the owner of a Majority in Interest of the Members [of GGEG] is a clear error." (Am. Br. 2.) It is Defendants' position that the record is

undisputed that for the Contingency Agreement to be binding on them, the Operating Agreement required Furr to approve the Contingency Agreement and no such approval was given. (Am. Br. 2.) Defendants contend that, as a result of Furr's failure to approve the Contingency Agreement, they are entitled to summary judgment on the breach of contract claim. (Am. Br. 3–4.)

24. In most instances, the parties seemingly make the same arguments on behalf of, or against, both Defendants. However, the Court believes there is a meaningful distinction between the evidence before it regarding the two entities and addresses GGEG and N Club separately herein.

### A.   N Club

25. The Complaint and record are clear that Plaintiff asserts a claim for breach of the Contingency Agreement against both GGEG and N Club. (Compl. ¶¶ 69–75.) Plaintiff alleges that Plaintiff and Defendants, both GGEG and N Club, "entered into and agreed to" the Contingency Agreement. (Compl. ¶ 69.) The Contingency Agreement before the Court is addressed to both GGEG and N Club. (*See generally* Contingency Agreement.) Its terms provide that Plaintiff is entitled to a certain percentage of both Defendants' recovery in the Cone Denim Action and "recovery shall mean any compensation GGEG and/or N Club receive[.]" (Contingency Agreement 1.) The Contingency Agreement includes a signature block for both GGEG and N Club. (Contingency Agreement 3.) Therefore, even if the breach of contract claim was ultimately dismissed against GGEG, that would not be determinative of Plaintiff's breach of contract claim against N Club.

26. However, there is no evidence in the record before the Court that an operating agreement was ever negotiated and signed for N Club, who the owners and managers were during the relevant time period, and what their ownership percentages were.[6] Accordingly, the Court is unable to discern whether Scarfone was authorized to sign the Contingency Agreement on behalf of N Club and bind N Club to its terms. The record does include a Professional Services Review Agreement dated 24 October 2017 seemingly sent to Scarfone on behalf of N Club and signed by "Rocco" on behalf of N Club. (Scarfone Aff. Ex. 5.) The record also includes a Settlement and Release of all Claims dated 24 April 2018 signed by Scarfone in his capacity as manager of N Club. (Scarfone Aff. Ex. 8.) Therefore, a reasonable inference could be drawn that Scarfone had the authority to sign the Contingency Agreement on behalf of N Club.[7]

27. As a result, the Court concludes that, as to N Club, Defendants have failed to demonstrate the need to correct a clear error in this Court's Order and Opinion. Therefore, Defendants' request that the Court, upon reconsideration, grant N Club partial summary judgment as to the claim for breach of the Contingency Agreement, should be DENIED.

---

[6] The evidence of record on these points is scarce. Scarfone's and Furr's respective affidavits state Scarfone is a member and manager of N Club and Furr is a member of N Club. (Scarfone Aff. ¶2; Furr Aff. ¶ 2.) Taking these statements together, there is still a less than clear picture of the ownership and structure of N Club.

[7] At the hearing on the Motion, counsel for Defendants indicated that N Club and GGEG have similar, or the same, operating agreements. However, no operating agreement of N Club has been made a part of the record before the Court and the Court declines to consider this statement by counsel for Defendants as evidence on the point.

**B.    GGEG**

28.    The Court now turns to Defendants' contention that Scarfone did not have the authority to bind GGEG to the Contingency Agreement and Plaintiff's responsive argument that there is a genuine issue of fact as to whether Scarfone had apparent authority to sign the Contingency Agreement on behalf of GGEG.

### 1.    The Holder of the Majority in Interest

29.    Importantly, the record before the Court on summary judgment appeared to be in dispute as to the ownership interests of GGEG at the time the Contingency Agreement was submitted by Rossabi to Scarfone.  While Defendants introduced testimony and documents tending to show that Scarfone did not own the Majority in Interest of GGEG, Plaintiff introduced evidence tending to show that, at the relevant time, Scarfone was owner of the Majority in Interest of GGEG and thus entitled to unilaterally approve the Contingency Agreement notwithstanding Furr's disagreement.

30.    This dispute was critical to the Court's analysis of the Summary Judgment Motion because, as Defendants point out, the Operating Agreement requires that, if Furr and Scarfone disagreed with a legal agreement of the type subject to this litigation, a Majority in Interest of GGEG's members were required to approve it.

31.    At the hearing on the Motion, counsel for Plaintiff conceded that GGEG's Minutes were valid and effective and were signed by Rossabi; that Rossabi was mistaken about the ownership interests when he signed the Rossabi Affidavit; and

accordingly, at the time relevant to this litigation, Scarfone did not hold a Majority in Interest of GGEG.

32. As an initial matter, regardless of Rossabi's subsequent concession, the Court was in error in its Order and Opinion in its statement as undisputed fact that Scarfone held the Majority in Interest of GGEG. (Order & Op. ¶¶ 10, 53.) Upon further consideration, the record initially before the Court disclosed a disputed issue of fact on this point. Accordingly, the Court GRANTS the Motion in part to the extent that the Court recited in paragraphs 10 and 53 in the Order and Opinion that Scarfone held the Majority in Interest. Those statements are hereby withdrawn. Based on Rossabi's subsequent admission to the Court, through his counsel, it is clear and undisputed that Scarfone did not own a Majority in Interest in GGEG at the relevant time.

## 2. Authority to Sign the Contingency Agreement on Behalf of GGEG

33. As a result of the Court's conclusion that it is an undisputed fact that Scarfone was not the owner of the Majority in Interest in GGEG at the relevant time, the Court determines it proper to reconsider GGEG's right to summary judgment as to Plaintiff's claim for breach of the Contingency Agreement. Simply put, because Scarfone did not own the Majority in Interest of GGEG, if he, as President, and Furr, as Vice President, disagreed on whether to enter into the Contingency Agreement, Scarfone could not unilaterally bind GGEG to the terms of the Contingency Agreement. Defendants contend that the evidence is undisputed that Furr did not

agree with the Contingency Agreement and, regardless of Plaintiff's evidence that Scarfone purportedly represented to Rossabi that he would sign the Contingency Agreement, Scarfone had no authority to do so.

34. Plaintiff contends that, notwithstanding its concession as to the owner of the Majority in Interest of GGEG, the Motion should nonetheless be denied because the Court cannot determine from the undisputed facts that (1) Furr did not approve the Contingency Agreement and (2) Plaintiff "*knew* that Furr had not approved the [Contingency Agreement] and that Plaintiff's reliance on Scarfone's *apparent authority* was, therefore, unreasonable as a matter of law." (Resp. 4–5 (emphasis in original).)

35. Plaintiff's position that "[t]here is a material question as to whether Scarfone and Furr discussed the [Contingency Agreement] and whether Furr approved it" is mistaken. (*See* Resp. 6.) Based on the Court's careful review of the record, it concludes that it is an undisputed fact that Furr did not approve the Contingency Agreement. (Furr Aff. ¶ 33.) Furr, by way of his affidavit, attests that he never approved any contingent fee agreement with Plaintiff. (Furr Aff. ¶ 33.) Plaintiff does not allege that Furr approved the Contingency Agreement. Nor does Plaintiff offer any evidence to rebut Furr's statement that he never approved the Contingency Agreement.

36. Accordingly, Plaintiff's argument that the Motion should be denied rests upon Plaintiff's position that a genuine question of fact exists "on the material issue of apparent authority[.]" (Resp. 7 (emphasis omitted).) It is Plaintiff's position that

"unless [D]efendants can prove that [P]laintiff had actual knowledge that Scarfone" did not have authority to bind Defendants to the Contingency Agreement, the Contingency Agreement is binding on Defendants. (Resp. 8 (emphasis omitted).)

37. Defendants contend that apparent authority does not apply in this instance because Rossabi, as a member of GGEG, is charged with knowledge of the terms of GGEG's Operating Agreement. (Reply 6.) The Court, at least in part, agrees with Defendants.

38. "Apparent authority is defined as 'that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses.'" *Media Network, Inc. v. Mullen Advert., Inc.*, 2007 NCBC LEXIS 1, at *49 (N.C. Super. Ct. Jan. 19, 2007) (citing *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 31 (1974)). "Where a third party in good faith and with reasonable prudence deals with an agent having apparent authority, the principal is bound by the agent's acts." *Foote & Davies, Inc. v. Arnold Craven, Inc.*, 72 N.C. App. 591, 595 (1985). "Any apparent authority that might otherwise exist vanishes in the presence of the third person's knowledge, actual or constructive, of what the agent is, or what he is not, empowered to do for his principal." *Com. Solvents, Inc. v. Johnson*, 235 N.C. 237, 242 (1952) (citation omitted).

39. Members of an LLC are generally charged with knowledge of the terms of the LLC's operating agreement. *See Levin v. Jacobson*, 2016 NCBC LEXIS 66, at *7 (N.C. Super. Ct. Aug. 25, 2016) (citing *Biesecker v. Biesecker*, 62 N.C. App. 282, 285 (1983) ("[A] person signing a written instrument is under a duty to read it for his own

protection, and ordinarily is charged with knowledge of its contents.")). Accordingly, Rossabi is charged with the knowledge of GGEG's Operating Agreement and GGEG's Minutes, both signed by Rossabi, which required the agreement by Furr and Scarfone or the approval of the Majority in Interest to bind GGEG to the Contingency Agreement and that knowledge is further imputed to Plaintiff. [8] *See Zloop, Inc. v. Parker Poe Adams & Berstein, LLP*, 2018 NCBC LEXIS 16, at \*17–18 (N.C. Super. Ct. Feb. 16, 2018) ("[A] principal is generally bound by the knowledge and acts of its agent when the agent clearly acts within the scope of his authority to conduct the principal's business."); *see also CompoSecure, LLC v. CardUX, LLC*, 206 A.3d 807, 823 (2018) ("[T]he knowledge of an agent acting within the scope of her authority on behalf of the principal LLC is imputed to the LLC.").

40.     The record is devoid of any facts that tend to show that: (1) Furr agreed to the Contingency Agreement, as required by GGEG's Operating Agreement; (2) any agent of GGEG represented to Plaintiff that Furr agreed to the Contingency Agreement; or (3) that Plaintiff, or any of its agents, believed Furr agreed to the Contingency Agreement.[9] The Court therefore concludes that Plaintiff has failed to

_____

[8] While generally whether Rossabi was acting in the scope of his authority to conduct Plaintiff's business would be a factual question, Plaintiff does not allege, or make any factual allegations that would support the conclusion, that Rossabi was acting on behalf of Plaintiff outside the scope of his authority.

[9] In the Rossabi Affidavit, Rossabi testified that "[a]ll of the allegations contained in the Complaint in the captioned matter are true and accurate based on my first-hand knowledge, except for those allegations alleged upon information and belief, and as to those matters, I believe them to be true." (Rossabi Aff. ¶ 3.) Plaintiff in part relies on an allegation in the Complaint: "[u]pon information and belief, Scarfone then showed the written contingency fee agreement to Furr." (Compl. ¶ 52.) This allegation made upon Rossabi's belief is insufficient to create a genuine issue of material fact as to whether Furr authorized the execution of the Contingency Agreement. *See Aesthetic Facial & Ocular Plastic Surgery Ctr., P.A. v. Zaldivar*,

forecast any evidence that Plaintiff reasonably believed that Scarfone had the authority to bind GGEG to the terms of the Contingency Agreement.

41. Therefore, even if the jury concluded that Scarfone represented to Rossabi that he signed the Contingency Agreement, there is no evidence that Scarfone had authority, actual or apparent, to properly bind GGEG.

42. In summary as to GGEG, the undisputed evidence shows that Furr did not approve the Contingency Agreement, and without such approval, Scarfone lacked authority to bind GGEG to the Contingency Agreement. Therefore, the Court concludes that the Motion should be GRANTED and GGEG awarded partial summary judgment as to the claim for breach of the Contingency Agreement.

## VI. CONCLUSION

43. For the foregoing reasons, the Court hereby **GRANTS** in part and **DENIES** in part the Motion. The Court **DENIES** the Motion to the extent N Club requests reversal of the Court's denial of N Club's Summary Judgment Motion in the Order and Opinion. The Court **GRANTS** the Motion to the extent GGEG seeks reconsideration of the Order and Opinion on the breach of contract claim asserted against it. The Court further **GRANTS** partial summary judgment in favor of GGEG and dismisses the breach of contract claim against GGEG.

---

264 N.C. App. 260, 268 (2019) ("Where defendants have presented evidence supporting a summary judgment motion, plaintiff cannot rely on its complaint but must produce evidence to create a genuine issue of material fact.").

**SO ORDERED**, this the 20th day of July 2021.

/s/ Michael L. Robinson
_____
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases